UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **FELICIA LLOYD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.: 1:25-cv-02297-TWP-MG** |
| | ) | |
| **MARIAN UNIVERSITY, INC., et al.** | ) | |
| | ) | |
| **Defendants** | ) | |

## <u>DEFENDANTS' ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES</u>

Defendants, Marian University ("Marian"), Dr. Sara Franco ("Dr. Franco"), Dr. Derrianne Monteiro ("Dr. Monteiro"), and Dr. Binh Q. Tran ("Dr. Tran"), by counsel, respond to Plaintiff's Verified Complaint for Damages ("Complaint") as follows:

### I.    INTRODUCTION

This is an action for damages arising from Marian University's and its agents' violations of the University's own academic and procedural policies; various forms of discrimination against Plaintiff, and a pattern of arbitrary and procedurally flawed actions that led to the wrongful dismissal of Plaintiff Felicia Lloyd from the Doctor of Nursing Practice (DNP) program at Marian. As a direct and proximate result of Defendants' actions, Plaintiff has suffered substantial financial harm, permanent professional and academic harm, and ongoing, severe emotional and psychological distress.

**<u>ANSWER:</u>**    Defendants deny the allegations contained in the "Introduction" section of Plaintiff's Complaint, except that they admit that Plaintiff brought this action against Defendants

for the claims stated in her Complaint.  Defendants expressly deny that they are liable for any or all such claims.

## II.     PARTIES AND ESSENTIAL WITNESSES

1.     PLAINTIFF FELICIA LLOYD is an adult citizen of the State of Missouri, residing at 1404 Sir Barton Dr., Columbia, MO 65202. She is a traveling nurse.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of Plaintiff's Complaint, and, accordingly, deny said allegations.

2.     DEFENDANT MARIAN UNIVERSITY is an institution of higher education incorporated under the laws of the State of Indiana, with its principal place of business at 3200 Cold Spring Road, Indianapolis, IN 46222. Its Leighton School of Nursing provides an in-residence doctoral program in Indianapolis, IN.

**ANSWER:**   Defendants deny the allegations contained in paragraph 2 of Plaintiff's Complaint, except that they admit that Marian is an institution of higher education incorporated under the laws of the State of Indiana, with its principal place of business at 3200 Cold Spring Road, Indianapolis, IN 46222, and that Marian's Leighton School of Nursing provides a Doctor of Nursing Practice program based in Indianapolis, Indiana.

3.     DEFENDANT DR. SARA FRANCO is, and at all times relevant hereto was, a professor for the NSG 607 course at Marian University's Leighton School of Nursing. She is believed to be a resident of Illinois. She initiated the academic integrity charge based solely on unverified statements. This accusation resulted in an extensive appeal process. The academic dishonesty accusation was ultimately dismissed on appeal.

4904-6786-7253.1

**ANSWER:**    Defendants deny the allegations contained in paragraph 3 of Plaintiff's Complaint, except that they admit that Dr. Franco was formerly a professor for the NSG 607 course at Marian University's Leighton School of Nursing and that she initiated an academic integrity charge against Plaintiff for academic dishonesty, which Plaintiff successfully appealed.

4.    DEFENDANT DERRIANNE MONTEIRO is, and at all times relevant hereto was, the Interim Director of the Nurse Anesthesia program at Marian University's Leighton School of Nursing (involved in the academic and dismissal appeal process). She is believed to be a resident of Indiana. She accused Felicia of academic dishonesty, removed her from coursework and clinical duties during the appeal process.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4 of Plaintiff's Complaint, except that they admit that Dr. Monteiro is a resident of Indiana, was at the times relevant hereto Assistant CRNA Program Director, Interim CRNA Program Director, and CRNA Program Director at Marian's Leighton School of Nursing, was involved at times in the academic and dismissal appeal processes, and accused Plaintiff of academic dishonesty and removed her from coursework and clinical duties during the appeal process.

5.    DEFENDANT PROVOST BINH Q. TRAN is, and at all times relevant hereto was, a Provost at Marian University involved in the dismissal process. He is believed to be a resident of Indiana. Although he was not part of either the academic integrity panel or the dismissal appeal committee, Felicia reached out to him directly as the Provost—the highest academic authority at Marian University.

**ANSWER:**    Defendants deny the allegations contained in paragraph 5 of Plaintiff's Complaint, except that they admit that Provost Binh Q. Tran is and at all times relevant hereto was a Provost at Marian, that he is believed to be a resident of Indiana, that he was not part of the

3

Academic Integrity Panel or dismissal appeal committee, that he was involved in the dismissal process as a result of Plaintiff reaching out to him directly, and that Provost is the highest administrative academic authority at Marian.

6.      Dr. Bradley Stelflug is, and at all times relevant hereto was, a faculty member and administrator at Marian University's Leighton School of Nursing. He is believed to be a resident of Nevada. He observed the meeting wherein Dr. Franco accused Felicia of academic dishonesty.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6 of Plaintiff's Complaint, except that they admit that Dr. Bradley Stelflug is believed to be a resident of Nevada, was formerly a faculty member and the Director of the DNP Program Nurse Anesthesia Track at Marian's Leighton School of Nursing, and that he was present at the meeting at which Dr. Franco accused Plaintiff of academic dishonesty.

7.      Dean Dorothy Gomez is, and at all times relevant hereto was, the Dean of Marian University's Leighton School of Nursing. She is believed to be a resident of Indiana. She denied Plaintiff's grade appeal, ignoring documented evidence of the requirement of ADA accommodations for Felicia.

**ANSWER:**    Defendants deny the allegations contained in paragraph 7 of Plaintiff's Complaint, except that they admit that Dr. Dorothy Gomez is believed to be a resident of Indiana, that she was formerly Dean of Marian's Leighton School of Nursing, and that she denied a grade appeal lodged by Plaintiff.

8.      Dean Tia Bell is, and at all times relevant hereto was, a Dean at Marian University involved in the academic and dismissal appeals process. She is believed to be a resident of Indiana. She is a member of both the Academic Appeal Proceedings and the Dismissal Appeal Proceedings.

4

4904-6786-7253.1

**ANSWER:**     Defendants deny the allegations contained in paragraph 8 of Plaintiff's Complaint, except that they admit that Dr. Bell is believed to be a resident of Indiana, that at times relevant hereto she was Dean of Nursing at Marian's Leighton School of Nursing, and that she was involved in proceedings related to Plaintiff's appeals.

9.     Assistant Provost William Harding is, and at all times relevant hereto was, an Assistant Provost at Marian University involved in the academic and dismissal appeals process. He is believed to be a resident of Indiana. He is a member of both the Academic Integrity Panel and the Dismissal Appeal Proceedings.

**ANSWER:**     Defendants deny the allegations contained in paragraph 9 of Plaintiff's Complaint, except that they admit that William Harting is and at all times relevant hereto has been an Assistant Provost at Marian, is believed to be a resident of Indiana, was involved in proceedings related to Plaintiff's appeals, and was a member of the Academic Integrity Panel.

10.     Assistant Provost Jonathan Lowery is, and at all times relevant hereto was, an Assistant Provost at Marian University involved in the academic appeals process. He is believed to be a resident of Indiana. He is a member of the Academic Integrity Panel.

**ANSWER:**      Defendants deny the allegations contained in paragraph 10 of Plaintiff's Complaint, except that they admit that Jonathan Lowery is and at all times relevant hereto has been as Assistant Provost at Marian University, is believed to be a resident of Indiana, has been involved in the academic appeals process from time to time, and was a member of the Academic Integrity Panel.

11.     Karen Betz is, and at all times relevant hereto was an instructor at Marian University involved in the academic appeals process. She is believed to be a resident of Indiana. She is a member of the Academic Integrity Panel.

4904-6786-7253.1

**ANSWER:**    Defendants deny the allegations contained in paragraph 11 of Plaintiff's Complaint, except that they admit that Karen Betz is and at all times relevant hereto was an instructor at Marian, is believed to be a resident of Indiana, has been involved in the academic appeals process from time to time, and was a member of the Academic Integrity Panel.

12.    Amanda Egan is, and at all times relevant hereto was an instructor at Marian University involved in the academic appeals process. She is believed to be a resident of Indiana. She is a member of the Academic Integrity Panel.

**ANSWER:**    Defendants deny the allegations contained in paragraph 12 of Plaintiff's Complaint, except that they admit that Amanda Egan is and at all times relevant hereto was an instructor at Marian, is believed to be a resident of Indiana, has been involved in the academic appeals process from time to time, and was a member of the Academic Integrity Panel.

13.    Tanja Greene is, and at all times relevant hereto was an instructor at Marian University involved in the academic appeals process. She is believed to be a resident of Indiana. She is a member of the Academic Integrity Panel.

**ANSWER:**    Defendants deny the allegations contained in paragraph 13 of Plaintiff's Complaint, except that they admit that Tanja Greene is and at all times relevant hereto was an instructor at Marian, is believed to be a resident of Indiana, has been involved in the academic appeals process from time to time, and was a member of the Academic Integrity Panel.

14.    Dr. Marie Goez is, and at all times relevant hereto was, an instructor of the Nurse Anesthesia program at Marian University's Leighton School of Nursing involved in the dismissal appeals process. She is believed to be a resident of Missouri. She is a member of the Dismissal Appeal Panel.

**ANSWER:**    Defendants deny the allegations contained in paragraph 14 of Plaintiff's Complaint, except that they admit that Dr. Marie Goez is believed to be a resident of Missouri, is an instructor of Graduate Nursing at Marian's Leighton School of Nursing, and that she was involved in proceedings related to Plaintiff's appeals.

15.    Dr. Vadim Korogoda is, and at all times relevant hereto was, an instructor of the Nurse Anesthesia program at Marian University's Leighton School of Nursing involved in the dismissal appeals process. He is believed to be a resident of North Carolina. He is a member of the Dismissal Appeal Panel.

**ANSWER:**    Defendants deny the allegations contained in paragraph 15 of Plaintiff's Complaint, except that they admit that Dr. Vadim Korogoda is believed to be a resident of North Carolina, is an instructor in the Nurse Anesthesia program at Marian's Leighton School of Nursing, and was involved in proceedings related to Plaintiff's appeals.

16.    Dr. Felicia Stewart is, and at all times relevant hereto was employed at Marian University and involved in the academic appeal process and the dismissal process. She is believed to be a resident of Indiana. She is a member of both the Academic Appeal Proceedings and the Dismissal Appeal Panel.

**ANSWER:**    Defendants deny the allegations contained in paragraph 16 of Plaintiff's Complaint, except that they admit that Dr. Felician Stewart is believed to be a resident of Indiana, is and was employed by Marian at all time relevant hereto, and was involved in proceedings related to Plaintiff's appeals.

### III.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this matter pursuant to Indiana Code § 33-29-1-1.5, which grants jurisdiction to the Marion Superior Court over civil actions.

**ANSWER:**    Defendants deny the allegations contained in paragraph 17 of Plaintiff's Complain as pertains to the federal district court in which this case is now filed.

18.    This Court has subject matter jurisdiction over claims arising under federal law, specifically the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as Indiana state courts have concurrent jurisdiction over these federal claims.

**ANSWER:**    Defendants admit the allegations contained in paragraph 18 of Plaintiff's Complaint.

19.    This Court has personal jurisdiction over Defendant Marian University because it is incorporated under the laws of Indiana and maintains its principal place of business in Marion County, Indiana.

**ANSWER:**    Defendants admit the allegations contained in paragraph 19 of Plaintiff's Complaint.

20.    This Court has personal jurisdiction over the individual Defendants as they were, at all relevant times, employees or agents of Marian University working within Marion County, Indiana, and their alleged wrongful conduct occurred either within the scope of their employment, or outside the specific duties but as a consequence of their employment with Marian University in Marion County, Indiana.

**ANSWER:**    Defendants deny the allegations contained in paragraph 20 of Plaintiff's Complaint, except that they admit that this Court has personal jurisdiction over Drs. Monteiro and Tran, that Drs. Monteiro and Tran were at all relevant times employees of Marian working within Marion County, Indiana, and that Dr. Franco was formerly employed by Marian.

4904-6786-7253.1

Defendants expressly deny that any of the individual Defendants committed any wrongful conduct.

21.     Venue is proper in Marion County pursuant to Indiana Trial Rule 75(A)(2) and (4), as the principal office of Defendant Marian University is located in Marion County, and the events giving rise to this action occurred in Marion County.

**ANSWER:**     Defendants deny the allegations contained in paragraph 21 of Plaintiff's Complaint, except that they admit that venue is proper in the federal district court in which this case is filed, that the principal office of Marian is located in Marion County, and that events giving rise to this action primarily occurred in Marion County.

### IV.     FACTS COMMON TO ALL COUNTS

22.     Felicia Lloyd holds a Bachelor's degree in Biology (1995) and a Bachelor of Science in Nursing (2000), both from the University of Missouri - Columbia.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of Plaintiff's Complaint, and, accordingly, deny the same.

23.     She worked as a registered nurse from October 2000 to May 2020 in various capacities, including at Fulton State Hospital, Boone Hospital, as a travel nurse, and at Palomar Hospital and Sharp Healthcare.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of Plaintiff's Complaint, and, accordingly, deny the same.

4904-6786-7253.1

24.     In 2019, Plaintiff applied to the Doctorate of Nursing Practice program to become a Certified Registered Nurse Anesthetist (CRNA) at Marian University's Leighton School of Nursing. She was accepted to matriculate into the program in May 2020.

**ANSWER:**    Defendants admit the allegations contained in paragraph 24 of Plaintiff's Complaint.

25.     In Spring Semester 2021, Plaintiff took NSG 607 ("Nurse Anesthesia Principles I"). She scored 82.26 for the full course; a passing score was 83.

**ANSWER:**    Defendants admit the allegations contained in paragraph 25 of Plaintiff's Complaint.

26.     During the course, two of Plaintiff's answers on an exam were not recorded in the school's grading system.

**ANSWER:**    Defendants deny the allegations contained in paragraph 26 of Plaintiff's Complaint.

27.     Plaintiff, a breast cancer patient, had been granted accommodation during the COVID-19 pandemic, allowing her to take exams remotely. A letter of approved accommodation was sent to all staff members. (Exhibit 1).

**ANSWER:**    Defendants deny the allegations contained in paragraph 27 of Plaintiff's Complaint, except that they admit that during the COVID-19 pandemic, Marian granted Plaintiff a reasonable accommodation specifying that her exams were to be presented to her in virtual or remote fashion throughout the semester due to a medical condition that rendered her at high risk regarding COVID-19, and issued Plaintiff an accommodation letter to that effect that Plaintiff attached to her Complaint as Exhibit 1, and except that they are without knowledge or

information sufficient to form a belief as to the truth of the allegation that Plaintiff was a breast cancer patient, and, accordingly, deny the same.

28.    Despite this university-approved accommodation, Defendant Dr. Franco mandated that all students, including Plaintiff, must take exams on campus, thereby exposing Plaintiff to situations that compromised her immunity and put her at risk of grave illness.

**ANSWER:**    Defendants deny the allegations contained in paragraph 28 of Plaintiff's Complaint.

29.    On April 26, 2021, Plaintiff conferred with Defendant Dr. Franco by phone, and Dr. Sara Franco again refused to extend Plaintiff the previously approved accommodation.

**ANSWER:**    Defendants deny the allegations contained in paragraph 29 of Plaintiff's Complaint.

30.    Defendant Dr. Franco, Dr. Bradley Stelflug, and Dean Dorothy Gomez separately and collectively denied Plaintiff's efforts to appeal according to university policy. The process for submitting the appeal was concluded on June 14, 2021.

**ANSWER:**    Defendants deny the allegations contained in paragraph 30 of Plaintiff's Complaint, except that they admit that Drs. Franco, Stelflug, and Gomez permitted Plaintiff to appeal her failing grade in a course according to applicable policy, that they each denied her appeal, and that the appeal process concluded on or about June 14, 2021.

31.    In January 2022, Dr. Stelflug allowed Plaintiff to register and retake NSG 607.

**ANSWER:**    Defendants admit the allegation contained in paragraph 31 of Plaintiff's Complaint.

32.    Plaintiff retook NSG 607 in Spring Semester 2022 and completed the course with a passing grade in May 2022.

**ANSWER:** Defendants admit the allegations contained in paragraph 32 of Plaintiff's Complaint.

33. On May 9, 2022, Defendant Dr. Franco falsely accused Felicia Lloyd, along with fellow student Krishna Woods of academic dishonesty, alleging they worked in concert to cheat on Plaintiff's scored exams. Without considering the full facts and circumstances surrounding her allegations, Defendant Dr. Franco summarily failed both students for the course.

**ANSWER:** Defendants deny the allegations contained in paragraph 33 of Plaintiff's Complaint, except that they admit that Dr. Franco accused Plaintiff and Krishna Woods of academic dishonesty in a course after she received information that Woods had provided Plaintiff with information covered on an examination she had already taken before Plaintiff took the examination, and that Dr. Franco gave both students a failing grade on the examination as a result, which further resulted in them failing the course.

34. In June 2022, Dean Gomez overturned Defendant Dr. Franco's failing grade, passing Plaintiff in the course. (Exhibit 2). This decision acknowledged the lack of corroborating evidence for the accusation.

**ANSWER:** Defendants admit the allegations contained in paragraph 34 of Plaintiff's Complaint.

35. By the end of 2023, Plaintiff maintained a cumulative GPA of 3.74 out of 4.0 and had successfully completed all coursework and clinical evaluations without further academic or conduct concerns.

**ANSWER:** Defendants deny the allegations contained in paragraph 35 of Plaintiff's Complaint, except that they admit that by the end of 2023, Plaintiff had a cumulative GPA of 3.74 out of 4.0.

4904-6786-7253.1

36.    Plaintiff continued clinical rotations as part of the curriculum going into 2024.

**ANSWER:**    Defendants admit the allegations contained in paragraph 36 of Plaintiff's Complaint.

37.    Defendant Dr. Derrianne Monteiro, Interim Director of the Nurse Anesthesia program, scheduled a meeting with Plaintiff for March 8, 2024 concerning Plaintiff's February 23, 2024 clinical rotation, for which preceptor Karen Earp, had cited that Felicia "needs improvement" and "does not meet expectation". Defendant Dr. Monteiro mandated remediation for Plaintiff on March 13 and 14, 2024, regarding the February 23 rotation.

**ANSWER:**    Defendants deny the allegations contained in paragraph 37 of Plaintiff's Complaint, except that they admit that Dr. Monteiro, who at the time held the position of CRNA Program Director, scheduled to meet with Plaintiff on March 8, 2024 concerning Plaintiff's February 23, 2024 clinical rotation, for which preceptor Karen Earp, had cited that Felicia "needs improvement" and "does not meet expectations," and that Dr. Monteiro mandated remediation for Plaintiff on March 13 and 14, 2024 regarding the February 23, 2024 rotation.

38.    At the end of the remediation, Defendant Dr. Monteiro informed Plaintiff that she should proceed to her next clinical rotation at Terre Haute Regional Hospital.

**ANSWER:**    Defendants deny the allegations contained in paragraph 38 of Plaintiff's Complaint.

39.    However, at 4:00 PM on March 14, 2024, Defendant Dr. Monteiro called Plaintiff, accusing her of academic dishonesty for having written the words "temp" and "bair hugger" on a mannequin in the simulation lab.

**ANSWER:**    Defendants deny the allegations contained in paragraph 39 of Plaintiff's Complaint, except that they admit Dr. Monteiro called Plaintiff at some point in the afternoon of

4904-6786-7253.1

March 14, 2024 to ask her if she wrote the words "temp" and "bair hugger" on the mannequin in the simulation lab, to which Plaintiff responded she did, and except that they are without knowledge or information sufficient to form a belief as to the truth of the allegation that this call occurred at 4:00 p.m.

40.     On March 19, 2024, after having completed her coursework, and less than seven weeks prior to graduation, Plaintiff received a formal letter from Defendant Dr. Monteiro asserting that: 1) Felicia had, truthfully, informed her of her writing on the face of the mannequin, 2) Felicia was being sanctioned for an uncited but what Defendant Dr. Monteiro called a "clear violation of the Code", 3) thus for the "observed academic dishonesty described above, and given the serious and egregious breach in professionalism related to this incident", that Defendant Dr. Monteiro was failing Felicia in the course. Furthermore, "due to the nature of this violation, you are unable to progress in this program pending a final resolution of this academic violation." (Exhibit 3).

**ANSWER:**     Defendants deny the allegations contained in paragraph 40 of Plaintiff's Complaint, except that they admit that on March 19, 2024 and approximately seven weeks prior to Plaintiff's projected graduation date, Plaintiff received the formal memorandum that Plaintiff attached to her Complaint as Exhibit 3 in which Dr. Monteiro recited, in part, that Plaintiff had informed Dr. Monteiro she wrote on the face of the mannequin, that Plaintiff was being sanctioned for a "clear violation of the Code," that due to the "observed academic dishonesty described above, and given the serious and egregious breach in professionalism related to this incident," Dr. Monteiro was failing Plaintiff in the course, and that "due to the nature of this violation, you are unable to progress in this program pending a final resolution of this academic violation."

41.    Defendant Dr. Monteiro failed to cite (to any specific) sections or provisions of the Student Handbook or other controlling University authority that would have made Felicia guilty of academic dishonesty.

**ANSWER:**    Defendants deny the allegations contained in paragraph 41 of Plaintiff's Complaint.

42.    Plaintiff responded to Defendant Dr. Monteiro, asserting her intent to appeal the dismissal decision.

**ANSWER:**    Defendants deny the allegations contained in paragraph 42 of Plaintiff's Complaint, except that they admit that Plaintiff responded to Dr. Monteiro stating that she would like to start the appeal process relating to the failing grade Dr. Monteiro had assigned.

43.    Plaintiff met with Defendant Dr. Monteiro and Dr. Felicia Stewart on March 25, 2024, to discuss her appeal. Defendant Dr. Monteiro denied Plaintiff's appeal. Plaintiff next appealed to Dean Bell and met with her on April 12, 2024.

**ANSWER:**    Defendants deny the allegations contained in paragraph 43 of Plaintiff's Complaint, except they admit that Plaintiff met with Drs. Monteiro and Stewart on March 25, 2024 to inform Plaintiff of the sanction imposed due to her academic dishonesty and next steps, that Plaintiff next appealed to Dr. Bell, and that Plaintiff and Dr. Bell met on April 12, 2024.

44.    On April 15, 2024, Dean Bell also denied Plaintiff's appeal.

**ANSWER:**    Defendants admit the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.    Plaintiff then appealed to the Academic Integrity Panel on April 22, 2024.

**ANSWER:**    Defendants admit the allegations contained in paragraph 45 of Plaintiff's Complaint.

4904-6786-7253.1

46.     Plaintiff presented her case to the Academic Integrity Panel consisting of Assistant Provost Harding, Assistant Provost Lowery, Professor Egan, Professor Betz, and Professor Greene on July 24, 2024. Although university policy requires academic due process, the panel's questions presumed wrongdoing by Felicia, while the Panel's questions for Dr. Monteiro pointed to a pre-determined outcome against Felicia.

**ANSWER:**     Defendants deny the allegations contained in paragraph 46 of Plaintiff's Complaint, except that they admit that Plaintiff presented her case to the Academic Integrity Panel consisting of Assistant Provost Harding, Assistant Provost Lowery, and Professors Egan, Betz, and Greene on July 24, 2024.

47.     Among other omissions of necessary factual findings, Defendant Dr. Monteiro failed to provide any evidence of an "intent to cheat" or evidence that would sufficiently corroborate such an intent on Plaintiff's part.

**ANSWER:**     Defendants deny the allegations contained in paragraph 47 of Plaintiff's Complaint.

48.     The core of the second academic dishonesty allegation centered on Defendant Dr. Monteiro's statement: "You stated that you wrote on the high-fidelity simulation mannequin language that would help you remember information relevant to the remediation occurred on March 14. According to our conversation, you believed that the articulated information would assist in your performance on the remediation experience." This statement, however, indicates that Felicia was truthful and does not in any way implicate her of violating any express or objective standard of conduct. No written or published policy prohibits writing on mannequins, though they are used widely at the school, and no evidence has ever been provided that such an act had ever before been counted as academic dishonesty under program standards.

**ANSWER:**    Defendants deny the allegations contained in paragraph 48 of Plaintiff's Complaint, except that they admit that Plaintiff accurately quotes a portion of the March 19, 2024 memorandum that Plaintiff attached to her Complaint as Exhibit 3, that this portion of the memorandum represents the core of Plaintiff's admitted conduct that caused Dr. Monteiro to conclude Plaintiff had committed academic dishonesty, that this was the second occasion in which Plaintiff had been accused of academic dishonesty, that no written or published policy expressly prohibited writing on mannequins, and that mannequins are frequently used at the school.  Defendants specifically deny that truthful admission of the conduct at issue in any way excused the conduct or rendered it not academic dishonesty, that the absence of an express policy prohibiting writing on mannequins means that Plaintiff did not commit academic dishonesty when she wrote on the mannequin to help her performance during the remediation, and that there were other known incidents of a graduate nursing student writing on a mannequin as a means to assist the student's performance on an examination.

49.    The Academic Integrity Panel denied Plaintiff's appeal on September 23, 2024. (Exhibit 4).

**ANSWER:**    Defendants admit the allegations contained in paragraph 49 of Plaintiff's Complaint.

50.    Plaintiff wrote to the University's "Dismissal Panel" on October 6, 2024, requesting a hearing and reinstatement into the program.

**ANSWER:**    Defendants deny the allegations contained in paragraph 50 of Plaintiff's Complaint.

51.    The Dismissal Panel met with Plaintiff on October 9, 2024, and summarily denied her request.

4904-6786-7253.1

**ANSWER:**     Defendants deny the allegations contained in paragraph 51 of Plaintiff's Complaint, except that they admit that Plaintiff met with the members of the Graduate Nursing Admission, Progression, and Retention Committee on October 9, 2024, and that on October 10, 2024, a member of this committee sent Plaintiff a letter informing her that her appeal to the committee had been unanimously denied.

52.     Plaintiff again sought reinstatement through Dean Bell on October 29, 2024.

**ANSWER:**     Defendants admit the allegations contained in paragraph 52 of Plaintiff's Complaint.

53.     Dean Bell again denied Plaintiff's request on November 14, 2024.

**ANSWER:**     Defendants deny the allegations contained in paragraph 53 of Plaintiff's Complaint, except that they admit that Dean Bell again denied Plaintiff's appeal on November 13, 2024.

54.     Lastly, Plaintiff wrote to Assistant Provost William Harding on November 29, 2024.  Assistant Provost Harding did not meet with Plaintiff but nonetheless denied her request on December 13, 2024.

**ANSWER:**     Defendants deny the allegations contained in paragraph 54 of Plaintiff's Complaint, except that they admit that on or about December 13, 2024, Assistant Provost Harting informed Plaintiff he was denying her appeal, and that no meeting between Harting and Plaintiff took place in connection therewith. Defendants expressly deny that any applicable policy required Harting to meet with Plaintiff before issuing this denial.

55.     Defendants, through their actions and omissions, violated the University's Code of Student Rights and Responsibilities ("Code") (Exhibit 5) and the Marian University Graduate

Handbook ("Student Handbook") (Exhibit 6), which combine to comprise the overarching contractual obligations the University has obligated itself to its students, including Felicia Lloyd.

**ANSWER:**    Defendants deny the allegations contained in paragraph 55 of Plaintiff's Complaint except that they admit that Marian's Code of Student Rights and Responsibilities was attached as Exhibit 5 to the Complaint, that Marian's Graduate Student Handbook was attached at Exhibit 6 to the Complaint, and that Marian's Code of Student Rights and Responsibilities may be found to constitute an implied contract between Plaintiff and Marian.  Defendants expressly deny that they, or any of them, breached any contractual obligations owed to Plaintiff.

## V.    COUNTS FOR DAMAGES

## COUNT 1: BREACH OF CONTRACT

56.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**ANSWER:**    Defendant hereby incorporates, as if fully set forth herein, its answers to paragraphs 1-55 of Plaintiff's Complaint as incorporated into paragraph 56 of Plaintiff's Complaint.

57.    Marian University's acceptance of Plaintiff into its DNP program, its Student Handbook, and its Code of Student Rights and Responsibilities constitute a binding contract between Plaintiff and Marian University.

**ANSWER:**    Defendants deny the allegations contained in paragraph 57 of Plaintiff's Complaint, except that they admit that Marian's Code of Student Rights and Responsibilities may be found to constitute an implied contract between Plaintiff and Marian.  Defendants expressly deny that they, or any of them, breached any contractual obligations owed to Plaintiff.

4904-6786-7253.1

58.     Defendants, individually, collectively, and as agents of Marian University breached this contract through numerous actions and omissions, including but not limited to:

a. **Allegations of Cheating and Lack of Due Diligence:**

i.  Defendant Dr. Franco's initial accusation of academic dishonesty in May 2022, later overturned by Dean Gomez.

ii.  Defendant Dr. Monteiro's accusation of academic dishonesty on March 14, 2024, regarding the mannequin incident in spite of a lack of any written policy against Felicia's actions.

iii. The failure of Defendant Dr. Monteiro, Dean Bell, and Assistant Provost Harding, and the Academic Integrity Panel, to conduct a thorough, objective, and impartial investigation into the March 2024 academic dishonesty claim, including their failure to gather sufficient, corroborating evidence for their conclusions.

b. **Inconsistency in Student Code of Conduct Enforcement and Bias/Unfair Hearing:** The Academic Integrity Panel unequally and arbitrarily applied the Student Code of Conduct by relying on Dr. Monteiro's subjective interpretation rather than objective evidence. This reliance reflects inconsistent enforcement of academic integrity rules and demonstrates bias in the hearing process.

c. **Improper Suspension from Course Participation and Imposition of Premature Sanctions:** including failure in the NSG 609 course and suspension from continuing progress toward completion, see Exhibit 3,  of the program, less than seven weeks prior to graduation, effectively dismissing Felicia from the program without the opportunity to pursue proper process and an appeal of Defendant Dr. Monteiro's action.

4904-6786-7253.1

d. **Inaccurate, Delayed, or Altered Assessments:** including Defendant Dr. Franco's failure to record two of Plaintiff's correct answers on the NSG 607 exam in Spring 2021.

e. **Failure to Consider Material Evidence and Disregard for Proportionality:**

i. The failure of Dean Bell, Assistant Provost Harding, and the Academic Integrity Panel, to adequately consider and give weight to Felicia's evidence.

ii. The imposition of an excessive and punitive sanction (program dismissal).

f. **Breach Of Implied Covenant Of Good Faith And Fair Dealing**

**ANSWER:**    Defendants deny the allegations contained in paragraph 58 of Plaintiff's Complaint.

59.    As a direct and proximate result of Defendants' breaches of contract, Plaintiff has suffered significant damages, including but not limited to, financial losses (e.g., tuition, legal fees, loss of earning capacity), academic harm (e.g., delayed graduation, dismissal), and severe emotional and mental distress.

**ANSWER:**    Defendants deny the allegations contained in paragraph 59 of Plaintiff's Complaint.

60.    Implicit in Plaintiff's contractual relationship with Marian University was an implied covenant of good faith and fair dealing, requiring the University and its agents to act honestly and fairly in their interactions with Plaintiff and in the enforcement of their policies.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6o of Plaintiff's Complaint.

61.    Defendant Marian University, through its agents, breached this implied covenant by engaging in a pattern of conduct, including but not limited to false accusations of cheating, the denial of a fair and transparent appeals process, prohibiting Felicia from recording meetings, and the disproportionate application of sanctions.

**ANSWER:**    Defendants deny the allegations contained in paragraph 61 of Plaintiff's Complaint, and expressly deny that Indiana's courts have recognized an implied covenant of good faith and fair dealing in contractual relationships between universities and students.

62.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing in contracts, Plaintiff has suffered significant damages, including but not limited to financial losses, academic harm, and severe emotional and mental distress.

**ANSWER:**    Defendants deny the allegations contained in paragraph 62 of Plaintiff's Complaint.

**COUNT II: DISCRIMINATION (AMERICANS WITH DISABILITIES ACT &**
**SECTION 504 OF THE REHABILITATION ACT)**

63.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**ANSWER:**    Defendant hereby incorporates, as if fully set forth herein, its answers to paragraphs 1-62 of Plaintiff's Complaint as incorporated into paragraph 63 of Plaintiff's Complaint.

64.    Plaintiff is an individual with a disability (breast cancer) as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and was known by Defendants to have this disability.

**ANSWER:**    Defendants deny the allegations contained in paragraph 64 of Plaintiff's complaint, except that they are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff has breast cancer, and, accordingly, deny said allegation.

65.    Marian University receives federal financial assistance and is therefore subject to Section 504 of the Rehabilitation Act. As a place of public accommodation, Marian University is also subject to Title III of the Americans with Disabilities Act.

**ANSWER:**    Defendants admit the allegations contained in paragraph 65 of Plaintiff's Complaint.

66.    Prior to the Spring Semester 2021, Plaintiff was granted a reasonable accommodation specifying that her exams were to be allowed to be taken remotely due to her compromised immunity during the COVID-19 pandemic.

**ANSWER:**    Defendants deny the allegations contained in paragraph 66 of Plaintiff's Complaint, except that they admit that prior to the Spring Semester 2021, Plaintiff was granted a reasonable accommodation specifying that her exams were to be presented to her in virtual or remote fashion throughout the semester due to a medical condition that rendered her at high risk regarding COVID-19.

67.    Despite this approved accommodation, Defendant Dr. Franco mandated that all students, including Plaintiff, take exams on campus, thereby denying Felicia's reasonable accommodation.

**ANSWER:**    Defendants deny the allegations contained in paragraph 67 of Plaintiff's Complaint.

4904-6786-7253.1

68.    Defendant Dr. Franco, in her duties at the University, failed to make available legally required accommodations, thereby discriminating against Plaintiff on the basis of her disability.

**ANSWER:**    Defendants deny the allegations contained in paragraph 68 of Plaintiff's Complaint.

69.    As a direct and proximate result of Defendants' discrimination, Plaintiff was exposed to situations where her compromised immunity could result in her becoming gravely ill, and she suffered emotional distress and other damages.

**ANSWER:**    Defendants deny the allegations contained in paragraph 69 of Plaintiff's Complaint.

70.    Plaintiff further engaged in protected activity under the ADA and Section 504 when she requested and was granted reasonable accommodations for her disability.

**ANSWER:**    Defendants admit the allegation contained in paragraph 70 of Plaintiff's Complaint.

71.    Defendant Dr. Franco, Dr. Bradley Stelflug, and Dean Dorothy Gomez subjected Plaintiff to unlawful, adverse treatment related to her protected activities, including denial of accommodations, by refusing to grant reasonable accommodations supported by medical documentation, including the ability to test remotely despite known health concerns, ultimately contributing to her dismissal from the program.

**ANSWER:**    Defendants deny the allegations contained in paragraph 71 of Plaintiff's Complaint.

4904-6786-7253.1

72.     As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered significant damages, including but not limited to, financial losses, academic harm, and severe emotional distress.

**ANSWER:**    Defendants deny the allegations contained in paragraph 72 of Plaintiff's Complaint.

### COUNT III: PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE

73.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**ANSWER:**    Defendant hereby incorporates, as if fully set forth herein, its answers to paragraphs 1-72 of Plaintiff's Complaint as incorporated into paragraph 73 of Plaintiff's Complaint.

74.     The Defendants, collectively, through their acceptance of Plaintiff into the DNP program and through reassurances, made clear and definite promises that Plaintiff could complete her program if she followed prescribed academic steps.

**ANSWER:**    Defendants deny the allegations contained in paragraph 74 of Plaintiff's Complaint.

75.     Plaintiff, in reliance on these promises, consistently followed the prescribed academic steps required by the program. She completed prerequisite coursework, maintained grades above the minimum required GPA, successfully remediated areas identified for improvement, participated in assigned clinical rotations, and complied with faculty directives regarding testing, assignments, and professional conduct. By doing so, Plaintiff fulfilled her obligations under the program's standards and demonstrated good faith performance of the conditions necessary to progress toward completion.

**ANSWER:**    Defendants deny the allegations contained in paragraph 75 of Plaintiff's Complaint, except that they admit Plaintiff completed prerequisite coursework, participated in assigned clinical rotations, was successful in most remediations, and complied with most faculty directives.  Defendants expressly deny that they promised Plaintiff that she could complete the program if she followed prescribed academic steps.

76.    Plaintiff reasonably relied on those promises to her detriment by continuing to pay tuition, travel for clinicals, and forgo other opportunities, including professional employment.

**ANSWER:**    Defendants deny the allegations contained in paragraph 76 of Plaintiff's Complaint, and expressly deny that Defendants promised Plaintiff that she could complete the program if she followed prescribed academic steps.

77.    The Defendants rescinded these promises arbitrarily and without justification. Despite Plaintiff's compliance with prescribed academic requirements, Defendants imposed inconsistent grading practices, denied accommodations previously acknowledged as reasonable, and removed Plaintiff from clinicals without cause. They further disregarded established University policies for appeal and remediation by shifting standards and expectations in a manner that was not applied to other students. These actions were taken without a legitimate academic basis and in direct contradiction to the assurances originally provided, thereby depriving Plaintiff of the fair opportunity to complete her program.

**ANSWER:**    Defendants deny the allegations contained in paragraph 77 of Plaintiff's Complaint, and expressly deny that Defendants promised Plaintiff that she could complete her program if she followed prescribed academic steps.

4904-6786-7253.1

78.    As a direct and proximate result of Defendants' broken promises and assurances, Plaintiff is entitled to damages resulting from her detrimental reliance on these promises, including lost tuition, lost earning potential, and other expenses.

**ANSWER:**    Defendants deny the allegations contained in paragraph 78 of Plaintiff's Complaint.

### COUNT IV:  DECLARATORY AND INJUNCTIVE RELIEF

79.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**ANSWER:**    Defendant hereby incorporates, as if fully set forth herein, its answers to paragraphs 1-78 of Plaintiff's Complaint as incorporated into paragraph 79 of Plaintiff's Complaint.

80.    An actual controversy exists between Plaintiff and Defendants regarding the validity and propriety of the disciplinary findings and dismissal decision.

**ANSWER:**    Defendants deny the allegations contained in paragraph 80 of Plaintiff's Complaint.

81.    Plaintiff seeks a declaratory judgment that the disciplinary findings and dismissal decision are void because Defendants: 1) breached contractual obligations and university policies requiring due process for students in the academic process 2) failed to provide the process due as protections required in academic disciplinary proceedings 3) violated other related university policies, and 4) failed to provide reasonable accommodations to Felicia at a time she medically required such accommodation due to COVID-19.

**ANSWER:**    Defendants admit that in paragraph 81 of her Complaint, Plaintiff purports to seek declaratory judgment and other remedies via her Complaint.  Defendants expressly deny

4904-6786-7253.1

that Plaintiff is entitled to any such relief or remedies or that they breached contractual obligations, violated university policies, failed to provide process due, or failed to provide the reasonable accommodation that was requested and granted.

82.    Felicia was in her final semester of coursework for her Doctor of Nursing Practice degree when she was dismissed from the program.

**ANSWER:**    Defendants deny the allegations contained in paragraph 82 of Plaintiff's Complaint, except that they admit that Plaintiff was in her final semester of coursework for her Doctor of Nursing Practice degree when she was determined to have committed academic dishonesty, which determination was upheld following her appeal and which subsequently led to her dismissal from the program.

83.    Plaintiff further seeks injunctive relief, including but not limited to reinstatement into the DNP program and expungement of all academic dishonesty findings from her record.

**ANSWER:**    Defendants admit that in paragraph 83 of her Complaint, Plaintiff purports to seek injunctive and other remedies via her Complaint. Defendants expressly deny that Plaintiff is entitled to any such relief or remedies.

84.    As a direct and proximate result of Defendants' actions and omissions, Felicia has already suffered great financial harm due to the acts and omissions of Marian and named staff members.

**ANSWER:**    Defendants deny the allegations contained in paragraph 84 of Plaintiff's Complaint.

85.    Without such declaratory and injunctive relief, Plaintiff will continue to suffer irreparable harm to her education, career, and reputation.

4904-6786-7253.1

**ANSWER:**    Defendants deny the allegations contained in paragraph 85 of Plaintiff's Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FELICIA LLOYD respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, for the following relief:

a. Compensatory damages for all financial losses, including but not limited to, tuition, lost earning capacity, and legal fees, in an amount to be determined at trial;

b. Compensatory damages for all academic harm suffered, including but not limited to, delayed graduation, loss of career opportunities, and the denial of her DNP degree;

c. Compensatory damages for severe emotional and mental distress, pain, and suffering, mental anguish, reputational harm, and loss of enjoyment of life;

d. Reinstatement: An order reinstating Plaintiff to the DNP program at Marian University or, in the alternative, a declaration that Plaintiff has successfully completed the program requirements necessary for awarding her degree;

e. Pre-judgment and post-judgment interest as allowed by law;

f. Academic level record expungement, including deletion of any references to academic dishonesty or disciplinary action from Plaintiff's academic record;

g. Declaratory relief prohibiting Defendants from continuing discriminatory, retaliatory, or arbitrary disciplinary practices, under Marian's own policies, against students in similar circumstances;

h. Costs of this action, including reasonable attorneys' fees; and

Such other and further relief as this Court deems just and proper.

4904-6786-7253.1

**ANSWER:**    Defendants deny that Plaintiff is entitled to any of the requested relief set forth in this "Prayer for Relief" or elsewhere in the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

### 1.

The Complaint fails, in full or in part, to state a claim upon which relief may be granted.

### 2.

This Court lacks jurisdiction over the person of Defendant Dr. Franco.

### 3.

Count I of the Complaint is barred against Drs. Franco, Monteiro, and Tran due to lack of privity of contract.

### 4.

Count I of the Complaint is barred for Plaintiff's failure to satisfy a condition precedent.

### 5.

Count II of the Complaint is barred in part due to the religious exemption set forth in 42 U.S.C. § 12187.

### 6.

Count II of the Complaint is barred to the extent that it seeks relief from alleged acts and omissions predating October 6, 2023, which claims were not brought within the time prescribed by applicable law.

### 7.

Count II of the Complaint must fail because Defendants did not act with deliberate indifference to Plaintiff's rights or claims.

4904-6786-7253.1

**8.**

Count II of the Complaint must fail because, to the extent that any alleged discrimination was a motivating factor in the action allegedly taken with respect to Plaintiff, the same action would have been taken in the absence of such motivating factor.

**9.**

Count II of the Complaint is barred because Plaintiff suffered no injury in fact and she thus lacks standing.

**10.**

Count II of the Complaint is barred because all actions taken by Defendants with respect to Plaintiff were, at all times relevant to this action, taken in good faith for legitimate, nondiscriminatory reasons.

**11.**

Plaintiff's claims, in whole or in part, are barred by the doctrine of laches and/or the doctrines of waiver, estoppel and unclean hands.

**12.**

Plaintiff was under an affirmative obligation to mitigate her damages and, to the extent she has failed to make any reasonable effort to do so, her alleged damages are subject to reduction.

WHEREFORE, Defendants pray that the Complaint be dismissed with prejudice, in its entirety, that Defendants be awarded their costs herein, including attorneys' fees, and that Defendants be granted such other and further relief as the Court may deem just and proper.

4904-6786-7253.1

Respectfully submitted,


*s/ Germaine Winnick Willett*
Germaine Winnick Willett, Atty. No. 21151-73
Hannah Oates, Atty. No. 36919-22
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2100
(Fax) (317) 236-2219
Germaine.Willett@icemiller.com
Hannah.Oates@icemiller.com

Attorneys for Defendant Marian University, Dr.
Sara Franco, Dr. Derrianne Monteiro, and Dr. Binh
Q. Tran

32